Nos. 219, 220, 221, 222, 223 and 224, February term, 1924.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. REBECCA BABBITT ET AL., DEFENDANTS.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. BARR, THAW & FRASER ET AL., DEFENDANTS.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. GEORGE RUSSELL ET AL., DEFENDANTS.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. KEUFFEL & ESSER COMPANY ET AL., DEFENDANTS.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. HARRIS GREENBERG ET AL., DEFENDANTS.

THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, PROSECUTORS, v. F. FERGUSON SONS ET AL., DEFENDANTS.

Submitted March 20, 1924—Decided June 12, 1924.

**Taxes and Assessments—Sewers—Sidewalks Under Home Rule Act—Review by Court of Common Pleas—Court's Corrections Sustained.**

On *certiorari,* &c.

Before Justices TRENCHARD, PARKER and CAMPBELL.

For the prosecutors, *John J. Fallon* and *Horace L. Allen.*

For the defendants, *Lichtenstein & Lichtenstein, Hopkins & Herr, Pierson & Schroeder, Besson, Alexander & Stevens, Carlyle Garrison, Harlan Besson, Maximilian M. Stallman* and *Wall, Haight, Carey & Hartpence.*

PER CURIAM.

These six writs bring up for review six orders made by the Hudson County Court of Common Pleas correcting certain assessments for improvements made by the board of assessment commissioners of the city of Hoboken.

All of the writs have been, by stipulation, consolidated, and have been argued together.

The assessment commissioners made six separate assessments. They were, roughly speaking, three for new sewer systems and three for paving, including sewer connections and sidewalks. After confirmation by the local authorities, the defendants herein appealed to the Common Pleas Court. Upwards of one hundred and fifty separate appeals were taken by the defendants herein, involving one thousand four hundred and sixty-nine city lots, out of a total of two thousand two hundred and sixty-three (excluding those owned by the railroads). These appeals were taken pursuant to section 42, article 20 of chapter 152 of laws of 1917 (Home Rule act), as amended by chapter 195 of laws of 1921: (Section 42 was again amended—*Pamph. L.* 1922, *p.* 201—but this amendment was subsequent to the taking of these appeals.)

We have examined with care the reasons assigned by the prosecutor, but have found none justifying any interference with any of the orders made by the Common Pleas Court.

The assessments were made under the Home Rule act, section 21, of which requires the assessors to "make a just and equitable assessment of the benefits conferred upon any lands or real estate by reason of such improvement; having due regard to the rights and interest of all persons concerned as well as to the value of the lands and real estate benefited."

Under section 24 assessments made for local improvements shall "in each case be as near as may be in proportion to the

peculiar benefit, advantage or increase in value which the respective lots and parcels of land and real estate shall be deemed to receive by reason of any such improvement, and in no case shall any assessment on any parcel of land exceed in amount such peculiar benefit, advantage or increase in value."

On appeal, the duty of the Court of Common Pleas, as laid down by the statute (section 42), is to have a hearing on which "said court shall determine whether or not the assessment for benefits or award for incidental damages appealed from, upon or to any parcel of land and real estate, is a just and fair assessment or award, and if not, shall make an order correcting the same," &c.

As to the connections the appeals were dismissed, and so are not before us.

As to the sidewalks, the argument is that the Common Pleas Court was not entitled to revise them, because of the old rule that sidewalks are always assessable against the abutting property on a cost basis. The answer to this, and, we think, a proper one, is that the whole assessment was handled under the Home Rule act, and under that act there are alternative methods of collecting for sidewalks, one the old way and another by including them as part of a "local improvement," which latter method was resorted to and followed throughout in the present case, and this brings into play the rule that assessments shall not exceed the benefits that obtains in other cases. See in this connection *Pamph. L.* 1919, *p.* 247.

There are a number of railroad properties involved, and there seems to be some sort of claim that the judge erred in his disposition of this special class of property, but, considering the reasons filed in connection with the briefs, we can find nothing of such definite and pointed character as to require consideration other than that which we give to the general question raised.

With respect to the general question: Here are six great assessments against two or three hundred owners each in most cases. Perhaps more than half of the owners appealed. The Common Pleas Court made schedules annexed to the

orders for judgment, in which appear the figures of the assessments as the court revised them. These six orders, with their schedules, are laid before us in bulk and are argued in bulk. It is difficult to put our finger upon any proposition of law involved which requires discussion. As we have pointed out, the duty of the Court of Common Pleas, as laid down by the statute (*Pamph. L.* 1921, *p.* 514, § 42), is to have a hearing, on which "said court shall determine whether or not the assessment for benefits or award for incidental damages appealed from, upon or to any parcel of land or real estate, is a just and fair assessment or award, and if not, shall make an order correcting the same," &c. In the present cases the court determined that the assessment were not just and fair and did make orders correcting the same. It seems that we are not asked to set aside individual assessments so much as to vacate entirely the orders made by the Common Pleas Court and to affirm the assessments as originally laid. We are asked to set aside these orders which correct these assessments, and counsel invoke the well-understood rule that where the commissioners have made the usual certificate that the assessments do not exceed the benefits, it takes cogent proof to overrule them, which is true enough. But, on the other hand, it seems proper to observe, that when there has been a statutory review on the facts as to the fairness and justice of the assessments by a competent court (in this case the Common Pleas), we should be equally loth to overrule the findings of that court after a long and careful hearing where evidence was taken in open court and argument had by counsel from time to time, and as to which evidence we shall make some further observations.

The practical difficulty in these cases is not far to seek, and in large part it is apparently the enormous increase in costs of labor and material since this scheme of improvement was first laid out by the engineer in 1913. At that time he seems to have estimated a little over $600,000 for the entire cost. The entire scheme has not been executed yet, but over $3,000,000 have already been expended, of

which seventy-two per cent. on the average has been assessed against low, swampy lots in the marshy district. In many of the cases the assessment amounts to more than the original value of the lot. It is very plain that a great deal of these sewers had to be built at an enormous expense, piles driven to support them, and so on. In such case the question very properly and naturally arises whether the very heavy assessments originally imposed were justified by the benefits conferred. The Common Pleas Court considered that they were not, and, as we have indicated, made an appropriate finding, by way of correction, as to all properties. And we think that the evidence of the experts, together with the other evidence, not only justified, but required, the findings made by the trial court. It has been said that the finding by the Common Pleas Court that an assessment for benefits has been made according to the peculiar benefits received by the property assessed, will not be reversed in the Supreme Court, if there be evidence from which the court so confirming the assessment could so find. *Dean* v. *Paterson,* 68 *N. J. L.* 664. Whether or not that rule is applicable to the present case, it is unnecessary for us to decide, for the reason, as we have indicated, the preponderance of the evidence required the conclusion that the court reached.

There is much argument by the prosecutor to the effect that the real estate experts called by defendants were not qualified, but we cannot say that the trial judge was wrong in admitting any one of them. Indeed, on the contrary, we think it is reasonably clear that they were qualified to say, as real estate dealers, whether the several lots were enhanced in value to the extent of the assessment.

We think there was no error in admitting the schedule called *Exhibit 8.* This seems to have been a recapitulation by some clerk of the figures adopted by the various witnesses put in tabular form. We do not think it was evidential at all, strictly speaking, but it was not offered or used as primary evidence, but only as a mere convenience, and as such was not improper.

Our conclusion is that we are not justified in setting aside the result arrived at in any case by the Common Pleas Court after this exhaustive investigation.

The writs will be dismissed, with costs.