601 A.2d 1212

FIRST FIDELITY BANK, PLAINTIFF, v. SOUTHEASTERN
INSURANCE GROUP, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided June 24, 1991.

*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade (Michael M. Rosenbaum, Claudia A. Costa,* appearing and on the brief), Short Hills, *David K. DeLonge, Scheider & Wiener,* Newark, for plaintiff.

*William D. Lipkind, Lampf, Lipkind, Prupis, Petigrow & LaBue,* West Orange. *Michael M. Rosenbaum, Budd Larner Gross Rosenbaum Greenberg & Sade,* Short Hills, for Bellezza, Olstein, Sabato and Paulus.

*James J. Higgins, Boyar, Higgins & Hayden,* Morristown, for Neil Prupis.

*Bruce M. Pitman, Pitman & Pitman,* Springfield, for Carl B. Shible.

*Gerald J. Houlihan, Steel, Hector & Davis,* Miami, Fla. *Amy Sarracino, Braff, Ertag, Wortmann, Harris & SuKoneck,* Livingston, Co-counsel for Robert A. Beck, II.

*Ross & Hardies, Helen Davis Chaitman,* Somerset.

*Steel, Hector & Davis Jay Starkman* appearing and on the brief, for defendant.

YANOFF, J.S.C. (temporarily assigned) (retired, on recall).

Involved here is *R.* 4:48–4, not yet interpreted by decision. The Rule reads:

> If a judgment is recovered against 2 or more persons, one of whom, liable thereon secondarily or equally with any other, satisfies the judgment, or when bail in a civil action is compelled to pay a judgment against a defendant, the person paying the judgment may on motion and notice to the other persons in interest, excluding the judgment creditor, apply to the court, for an order allowing him the full benefit and control of the judgment and any outstanding execution. The court may make such order, on terms, and may direct that new execution issue for the purpose of compelling payment or contribution by any party liable in the amount fixed by the court.

Since the Rule contains no directives as to resolutions of issues when a dispute arises as to the relief requested, this opinion deals with that problem.

On June 29, 1990, an Order for Summary Judgment, for $3,300,000 plus interest, attorneys' fees and costs,[1] was entered in favor of plaintiff, First Fidelity Bank, N.A., N.J. ("First Fidelity"), against Robert Pershes ("Pershes"), Robert A. Beck II ("Beck"), Ronald Prupis ("R. Prupis"), Carol B. Shible ("Shible"), Leonard Bellezza ("Bellezza"), William D. Lipkind ("Lipkind"), Ernest J. Sabato ("Sabato"), Harry Olstein ("Olstein"), William Paulus, Jr. ("Paulus"), and Neil Prupis ("N. Prupis").

Bellezza, Olstein and Paulus (sometimes referred to as "Group") settled with First Fidelity for $3,310,000, and First Fidelity issued its warrant for Satisfaction of Judgment. Uncertainty as to whether the Judgment was satisfied by payment of less than its full amount has been resolved.

Defendants' liability was created by their guaranty of the indebtedness to Fidelity of Southeastern Insurance Group, Inc. ("SIG"). The settling defendants now seek, under the quoted Rule, to enter judgment summarily against the others.

I directed entry of judgment, with right to issue execution, but disposition of proceeds stayed to permit the non-settling

---

[1] The judgment was augmented by $183,562.50 for interest and $106,575.00 for attorneys' fees and expenses.

defendants to develop their positions. Defendant Beck has produced extensive documentation in which he asserts that his guarantee to Fidelity was induced by the fraud of Group; that he was induced to assume the position of President of SIG by misrepresentation by Group as to the assets of SIG; that Group and other defendants improperly mulcted the assets of SIG, causing it to become insolvent; that Bellezza and Paulus used corporations known as Chief Structures, Inc. ("Chief"), and Construction Performance Corporation ("CPC") as instrumentalities to profit in violation of Florida law. Alleged also are other claims of fraud and illegality which need not be specified.

Suffice it, that Beck's position is supported by evidence which raises issues of fact. The principle, now classic, is that, if the papers in opposition to a motion for summary judgment raise a fact question, the motion must be denied. *Pressler, Current N.J. Court Rules,* Comment *R.* 4:46–2 (1991). Since Group seeks, in effect, summary disposition of a claim, even though not under *R.* 4:46–1, the inquiry must be whether a fact question has been raised.

In opposition to a full hearing, the moving parties assert that the Beck allegations of fraud and misconduct are not credible. But when statements in opposition to a summary judgment motion are appropriately verified, it is not for the motion judge to pass on veracity. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 110 *A.*2d 24 (1954); *Bilotti v. Accurate Forming Corp.,* 39 *N.J.* 184, 188 *A.*2d 24 (1963); *Slohoda v. United Parcel Serv, Inc.,* 193 *N.J.Super.* 586, 475 *A.*2d 618 (App.Div.1984).

Group argues also that "Beck Has No Standing To Assert An Action For Fraudulent Inducement Against Group", relying upon the standard definition of fraud in *Jewish Center of Sussex Cty. v. Whale,* 86 *N.J.* 619, 432 *A.*2d 521 (1981). The "standing" contention is basically that the alleged fraud of Group did not cause Beck to sign the guaranty. However, Beck asserts the contrary, claiming that had not members of

Group misled him as to the financial condition of SIG, he would not have signed. As to this claim, the language in *Grow Farms Corp. v. Nat'l State Bank, Elizabeth*, 167 *N.J.Super.* 102, 400 *A.*2d 535 (L.Div.1979) is dispositive:

Since 1789, when Pasley [sic] was decided, it has been recognized that an action for fraud and deceit will lie against a defendant where it is shown that plaintiff was induced by defendant's misrepresentation to deal with a third party. This is true even though plaintiff had no dealings with defendant. See *Prosser on Torts* (4 ed. 1971), Sec. 105 at 685. In the instant case it has been alleged by plaintiff that it is in the class of individuals defendant intended to influence by its conduct. *Id.* at 107–108, 400 *A.*2d 535.

*Rosenblum v. Adler*, 93 *N.J.* 324, 461 *A.*2d 138 (1983) held that a claim for negligent misrepresentation would lie against public accountants even in the absence of privity. Beck's position here is comparable, except that the claim is intentional instead of negligent misrepresentation. Thus, from the standpoint of substantive law, Beck's position is sound.

Required now is determination of the procedure applicable under *R.* 4:48–4.

I have concluded that the Rule is the vestigial remnant of the writ of *scire facias*. *DELUXE BLACK'S LAW DICTIONARY* 1346 (6th ed. 1979) defines *Scire Facias* as: "In practice. A judicial writ, founded upon some matter of record, such as a judgment or recognizance and requiring the person against whom it is brought to show cause why the party bringing it would not have advantage of such record," ...

In 79 *C.J.S.*, Scire Facias, Sec.3 at 458, it is stated:

Scire facias has, in some cases, many qualities of an original writ and sometimes it partakes of the nature of a writ of summons. It may also be considered as being in the nature of an order or rule to show cause. *Id.* at 459.

. . . .

A scire facias is in the nature of an action or suit for the reason, and at least to the extent, that the defendant may plead to the writ. *Ibid.*

. . . .

Further: Generally the issues in scire *facias* proceeding are formed in the same manner as prevails in other civil cases. *Id.* at 466. (Emphasis supplied.)

The problem which the Rule addresses is the consequences of a warrant of satisfaction. Since a warrant extinguishes a

judgment, a mechanism for preserving the rights of joint judgment debtors who satisfy the judgment against other joint debtors is necessary. See, *Thomas v. Gardner*, 187 *N.J.Super.* 510 (App.Div.1983).

Prior to promulgation of *R.* 4:48–4, *2 General Statutes of New Jersey*, pg. 1845 (L.1881, *C.* 31, sec. 1) provided that, "where judgment was entered against more than one defendant, and one defendant satisfied the judgment, the judgment would be [assigned] to the paying defendant." The statute further stated: ... "provided, that such defendant or defendants shall only recover on such execution the proportional share of said judgment or decree for which the defendants as to whom such satisfaction has not been entered were originally liable; ... ". However, that statute and amendments thereto are no longer in force since the several revisions of our statutes. In the language of Justice Perskie in *Duke Power Co. v. Somerset Co. Bd. of Taxation*, 125 *N.J.L.* 431, 15 *A.*2d 460 (E & A 1940), "the revision is a wholly-independent enactment, superseded on existing general laws". *Id.* at 433, 15 *A.*2d 460. Accord: *Breuer v. Montvale*, 55 *N.J.Super.* 369, 373 [151 *A.*2d 53] (App.Div.1959).

The only statute extant which makes reference to the *writ of scire facias* is *N.J.S.A.* 2A:15–39, reading: "A writ of *scire facias* shall be served by the sheriff or other person to whom it is directed in the same manner as a summons." Obviously, this provides no guidance as to procedure.

An early reference to the writ is found in *Buchannan v. Rowland*, 5 *N.J.L.* 845 (Sup.Ct. of Judicature 1820). The question there was whether a judgment more than twenty years old was presumed to have been paid. In the opinion, Justice Rossell noted: ... "By our statute (Pat. 353) no *scire facias* is allowed to issue to revive a judgment after twenty years, except under the usual provisos of infancy & c." *Id.* at 861. The issue was tried to a jury and the verdict was set aside because the creditor had failed to proceed on the judgment for

a period of more than the statute of limitations of twenty years. The importance of the case is that the fact issue was tried to a jury.

There are other references to the writ in the old cases. In *Castner v. Styer*, 23 *N.J.L.* 236 (NJ Sup.Ct. 1852), the problem was whether a garnishee under a judgment could question its regularity. The Court held that it could not because the sheriff's return of service of the writ was conclusive. The case demonstrated that the writ at the time was a means of instituting an action, just as are summons and complaints today.

In *Forest v. Price*, 37 *N.J.L.* 177 (NJ Sup.Ct. 1874), a *writ of scire facias* was issued to revive a judgment in favor of a deceased plaintiff. The writ revived a judgment which would otherwise have been terminated, precisely the function of *R.* 4:48–4.

More recently, the writ was considered in *Ehnes v. Weldon*, 13 *N.J.Super.* 23, 80 *A.*2d 123 (App.Div.1951), an action on a Pennsylvania judgment, where the writ was commonly used. The judgment had been rendered more than twenty years before suit in New Jersey. The trial court held that the delay in enforcing the judgment created a presumption of payment and decided in favor of the defendants. The Appellate Division affirmed, Judge Bigelow, for the Court, observed: "In *Cusano v. Rubolino*, 351 Pa. 41, 39 *A.2d* 906 (1944), it is said that *scire facias* 'is a process merely to continue or revive the lien of a judgment obtained in an original action.' " *Id.* 13 *N.J.Super.* at 26, 80 *A.*2d 123. The decision is significant in the context of the case at bar because it delineates the function of the writ.

In *Hartman v. Alden*, 34 *N.J.L.* 518 (E & A 1870), an action initiated by *scire facias* on conflicting evidence as to whether a judgment had been paid, a jury was impanelled. The Court of Errors and Appeals reversed a directed verdict for defendant, holding that conflicting facts presented a jury issue. Accord. *Brady v. Tarr*, 145 *Pa.Super.* 316, 21 *A.*2d 131 (1941); *Rosenthal v. Crimlisk*, 84 *Pa.Super.* 426; *Cf. Coleman & Stahl v.*

446

*Weimer,* 86 *Pa.Super.* 303 (1925), where there was no dispute as to payment and the issue was thus solely for the Court.

■ The alternatives before me are to decide the complex factual issues raised here by affidavit or on summary hearing, or by recourse to the procedures carefully delineated in the Rules. The traditional role of the writ of *scire facias* is to provide a method for making such determinations, either by legal or factual findings, having recourse to a jury where appropriately indicated. The mere fact that the litigation is among judgment debtors should not deprive the litigants of the rights which they would have had, had a judgment not been entered. While the language of the Rule is not precise, it must be considered against the background of all of the Rules, and the intention of all of the Rules, to afford litigants a complete and fair trial.

■ My conclusion is that invocation of *R.* 4:48–4 triggers the initiation of litigation which should be controlled—if not precisely in accordance with the rules applicable when started by summons and complaint, but in accordance with the spirit of the Rules. Therefore, I shall use the means of status conference to control discovery in preparation for trial.

Counsel for Beck should submit an Order in conformity with this opinion.